33 C.C.P.A.(Patents)

### Application of MARTIN.

### Patent Appeal No. 5080.

Court of Customs and Patent Appeals.

March 4, 1946.

See also, 154 F.2d 130.

Pennie, Davis, Marvin & Edmonds, of New York City (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

The Primary Examiner of the United States Patent Office rejected claims 1 to 12, inclusive, of appellant's application No. 289,262 for a patent on a method of refining petroleum oils to produce low viscosity lubricant oils. All the claims except claim 10 were rejected as defining aggregations and as reciting nothing patentable over the prior art cited. Claim 10 is drawn to a non-elected species and its allowability depends upon the allowance of certain of the other claims.

The Board of Appeals affirmed the action of the Primary Examiner and appellant's appeal here is from its decision.

In this court appellant moved to dismiss the appeal as to all the claims except 2, 5, 7, 8, 10 and 12, and the motion will be granted.

Claims 2, 7 and 12 are regarded as illustrative and read as follows (the two principal treating steps which are of importance here being italicized by us):

"2. The method of producing stabilized low viscosity lubricating oils from relatively high viscosity petroleum stocks which comprises *subjecting the high viscosity stock to solvent extraction* for the extraction of constituents undesirable in a lubricating oil *and to mild thermal-catalytic cracking* at a temperature of about 600°-800° F."

"7. The method of producing stabilized low viscosity lubricating oils from relatively high viscosity petroleum stocks which comprises *subjecting the high viscosity stock to mild thermal-catalytic cracking* at a temperature of about 600°-800° F. *and subsequently subjecting the cracked stock to solvent extraction* for the extraction of

constituents undesirable in a lubricating oil."

"12. The method of producing stabilized low viscosity lubricating oils from relatively high viscosity petroleum stock which comprises *subjecting the high viscosity stock to mild thermal-catalytic cracking* at a temperature of about 600°-800° F., *subsequently subjecting the cracked stock to solvent extraction* for the extraction of constituents undesirable in a lubricating oil, subjecting the cracked and extracted stock to contact with a bleaching earth at a subcracking temperature, and transferring the spent bleaching earth from the lower temperature contact operation to the higher temperature thermal catalytic cracking."

The references relied upon are:

Wagner et al., 2,155,745, April 25, 1939;

Nelson et al., 1,990,664, February 12, 1935;

Rosenberg (British), 109,572, September 20, 1917;

Alther, 2,005,257, June 18, 1935;

Houdry, 2,173,844, September 26, 1939;

Walsko, 2,199,931, May 7, 1940;

Walsko, 2,199,930, May 7, 1940;

Stratford, 1,860,823, May 31, 1932;

Egloff, 1,688,861, October 23, 1928;

Teichmann 2,014,915, September 17, 1935.

The board described appellant's alleged invention as follows:

"Applicant has discovered that relatively low viscosity lubricating oils having high stability and excellent lubricating value may be produced by breaking the viscosity of stocks of relatively high viscosity, such as high viscosity distillate and residual lubricating oil stocks from naphthenic and mid-continent as well as Pennsylvania crudes. Applicant's method comprises the steps of mild thermal catalytic cracking of relatively high viscosity stock in conjunction with the solvent extraction of the stock for the extraction of constituents undesirable in a lubricating oil. It is disclosed that the breaking operation may precede solvent extraction or the order of these steps may be inverted, but that the order of these steps has an important effect on the color stability of the product. If the breaking step is followed by solvent extraction, the product is characterized by low carbon residue, good color and high color stability, but if the solvent extraction step precedes the viscosity breaking step, the product has poor color stability."

We quote liberally from the board's decision since we are in agreement therewith and it seems to cover substantially all the questions involved and all the main contentions of appellant, and sufficiently points out what the prior art shows:

"Claims 1 to 9, inclusive, 11 and 12 have been rejected on the patents to Nelson et al., Alther, Wagner et al. or Rosenberg in view of the Walsko patents, the patent to Egloff or the patent to Stratford. The examiner states that viscosity cracking is old in the first group or primary references and that the solvent extracting operation is shown in each of the secondary references. The examiner concedes that the viscosity cracking and solvent extraction references do not disclose the combined operation but states that selective solvent extraction of lubricating oils for the purpose of raising the viscosity index and other properties of lubricating oil stock is old and is a distinct process by itself, a whole subclass of Class 196 being devoted to it.

"Appellant states that in recent years in order to meet the increasing demand for low viscosity lubricants, it has been proposed to apply a mild cracking treatment to heavy lubricating oil stocks to increase the supply of low viscosity lubricants but that these were not satisfactory as lubricants and were incorporated in a blend, the major portion of which consisted of a virgin low viscosity lubricating fraction which had not been subjected to viscosity breaking. It is stated that in the present process applicant directly produces from high viscosity stocks a low viscosity lubricating oil that has excellent lubricating value, high stability and high viscosity index such that it may be directly used without blending with virgin uncracked stocks.

"Appellant states that t'e patent to Houdry is the only reference which discloses that a viscous oil of any character is subjected to thermal catalytic cracking under conditions which produce a reduction in viscosity and that it has to do with cracking such that the final product will be useful in place of a gas oil fraction not as a lubricant.

"As to the group of primary references, appellant states that Wagner recognizes the increased demand for low viscosity

lubricating oils and subjects high viscosity lubricating oil stock, such as 'bright stock,' to cracking conditions but that none of this is effected by solvent extraction. Appellant discusses at length the disclosures of each of the references and submits that they are devoid of any teaching of applicant's contribution to the industry.

"The examiner has also rejected claims 1 to 9, inclusive, 11 and 12 on the ground of aggregation. The examiner states that these claims involve two separate, distinct and well known operations and that there is no coaction between the viscosity breaking operation and the solvent extracting operation and that the two operations may be performed in either order.

"Appellant argues that the two principal steps common to all the appealed claims do coact in achieving a unitary result. Appellant states that it is known that certain of the functions performed by both of the principal steps do overlap and because of this overlapping it is not necessary to apply either one as severely as if the cracking treatment were relied upon to effect the entire reduction in viscosity and the other step were relied upon to produce all the purifying action.

"It is to be noted that the claims do not set out how much cracking is required or how little extraction is required to produce the desired result. It would seem that applicant can use the cracking step to any extent desired and then supplement it by the extraction step. What joint result, if any, is produced by the use of the two steps more than their mere addition to each other is not clear. It is argued that while the examiner concedes the successive application of the two steps to a high viscosity oil is novel, he is unable to cite any passage in the art embodying a teaching or to give any reasonable basis for assuming that the application of the two treating steps in succession would provide the capability of achieving a unitary result which cannot be achieved by a more severe application of either of them individually or by any other known process. It seems that it is rather applicant's burden to show in the first place that he produces a new result due to the joint action of the two steps which is not the result of adding together the known functions of these two steps.

"It is our view that these claims are unpatentable over the combination of references cited by the examiner and that the rejection on the ground of aggregation is proper.

"Claim 10 has been rejected on the ground that it does not read on the elected species. Appellant concedes that this rejection is proper in the event that no generic claim is allowable."

Appellant has urged here at great length that while it is old in the art, as shown by the first group of references, to subject oils or oil stocks of high viscosity to a mild thermal-catalytic cracking treatment for the purpose of lowering the viscosity, and while it is also old, as disclosed by the Walsko patents, to subject oils like those which appellant proposes to treat to the step of solvent extraction, and while the prior art discloses the use of the particular solvent employed by appellant, the prior art does not anywhere show the employment of both steps either in the order above named or in the reverse order. He argues that unusual and unexpected results, not merely the combined normal result of applying the steps separately, were obtained and urges that since the steps of his method, though a combination of old steps, has by the combination produced a new, useful and unexpected result his claims so defining his alleged invention should not be rejected upon the prior art cited.

The holding of the board as appears from its above-quoted decision is to the effect that the claims do not call for any particular degree of cracking nor specify the extent to which the solvent treatment is applied and that it is not clear that the result is anything more than could be expected from that flowing from the application of the steps as taught by the prior art when the two steps are combined, and that therefore there is no invention in combining the two old steps as appellant has done.

It will be noted that the cracking temperature mentioned in the appealed claims is 600°-800° F. This is, concededly, the temperature range in the cracking step of some of the references.

Appellant, after the board's decision, with a petition for reconsideration, filed the affidavit of Robert H. Gardner, which purported to show, to some extent at least, that tests made (which were not extensive by reason of lack of time to make complete tests) showed that the old steps, when ap-

plied separately or when applied in the order other than preceding the solvent treatment step with the cracking step, did not produce the results that flowed from his treatment of the same stock in the manner called for by such claims as claim 7.

The board, upon reconsideration, pointed out that appellant had filed the said Gardner affidavit but that this could be considered only as an argument and not as definite proof of the results argued for by appellant. It again reiterated the view that appellant had merely added together the two old steps in the order claimed and secured nothing more than the added result that would necessarily flow from such addition, and that "the joining of the two steps in the order claimed does not produce any result which would not be produced by adding the two old steps in the order named," and that "the process should produce a result due to the joint and cooperating action of the steps which is not the mere adding together of separate contributions."

■ The Solicitor for the Patent Office in this court points out that the Gardner affidavit, regardless of what it shows or fails to show, which was produced evidently for the purpose of being directed at proving the claimed unexpected results, **is** not properly before this court since it was filed after the board's original decision and was not remanded to the examiner for his consideration, and cites in support thereof In re Christmann et al., 128 F.2d 596, 29 C.C.P.A., Patents, 1037.

This case would seem to clearly support the position taken by the Solicitor and so we must conclude that irrespective of the showing made by the affidavit as to the results obtained in appellant's tests it can be regarded only as an argument and not as proof of the alleged results being other than those stated by the board.

■ It seems to us that what appellant has done is to apply two conventional steps in obtaining low viscosity oils from high viscosity stocks and obtained nothing more than the combined benefits that would flow from the application of the steps if applied separately, and that in view of the teachings of the art the obtaining of new and useful results in this manner would not amount to invention since it would seem to be nothing more than one skilled in the art would do to obtain the best results.

■ Appellant stresses here that his procedure obtained a more satisfactory result than could be expected from such combination of steps and that the basis for his claimed invention results in such improvement as would not necessarily flow from the added results of the two conventional steps but that it necessarily flowed from a new and unexpected coaction between the two steps which produced a result so unusual and beneficial as to differ in a patentable sense from a situation where the results were merely aggregative.

Appellant's counsel freely concedes that the unusual and unexpected results obtained by following his claimed method, particularly where the cracking step precedes the solvent extraction step, involve a "phenomena" which is difficult of explanation and that the chemical reactions involved are so complex as to render unexplainable the cause of the desirable color stability results. He further states that where the preferred method of first cracking and then solvent treating is followed this dispenses with the necessity of later adding a color stabilizer as is required in the non-preferred form.

Regardless of what might be said of the merits of appellant's affidavit if we were privileged to consider it, we are not convinced that the tribunals of the Patent Office were not correct in their holding with respect to the nature of the results obtained. We are of the opinion therefore that to allow appellant the claims here would be calculated to permit alleged inventors in this somewhat crowded art to seriously handicap those skilled in the art in taking advantage of prior art teachings in producing low viscosity oil.

Upon the instant record we conclude that appellant's alleged improvement in low viscosity oil production does not amount to invention and that the appealed claims were properly rejected by the board for the reasons stated, and its decision is affirmed, as to claims 2, 5, 7, 8, 10 and 12, and the appeal as to claims 1, 3, 4, 6, 9 and 11 is dismissed.

Affirmed.