49 CCPA

## Application of Frederick K. KIRCHNER.

### Patent Appeal No. 6794.

United States Court of Customs and Patent Appeals.

July 25, 1962.

Laurence & Laurence, Washington, D. C. (Dean Laurence and Herbert I. Sherman, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Joseph Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

---

RICH, Judge.

This appeal is from the affirmance of the rejection of claims 1, 5, 7, 9 and 13 of appellant's patent application Ser. No. 581,356, filed April 30, 1956, for chemical compounds of the class N,N'-Bis (di-lower-alkylamino-lower-alkyl) dicarboxylic acid amides. Certain claims have been allowed. The appealed claims all describe compounds per se, with no reference to their use. It is unnecessary to consider either the technical details of the compounds or the differences between the claims, which all stand or fall together according to the decision of a question of law.

There is a reference [1] which describes one compound falling within all of the appealed claims which appellant admits is a statutory bar to the granting of a patent on the above claims, having been published more than a year before the filing date of the application at bar, unless that application is entitled, as to the appealed claims, to the filing date of a parent application, of which it is stated to be a continuation-in-part, application Ser. No. 369,836, filed June 10, 1953, a date earlier than that of the reference. That application was allowed to become abandoned.

Appellant's claim of right to rely on the parent application filing date, and thus dispose of the sole reference relied on,[2] is made under 35 U.S.C. § 120 which reads, in pertinent part:

"An application for patent for *an invention* disclosed in the manner provided by the first paragraph of

---

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

1. "Arnold et al., Proc.Soc.Exptl.Med., Vol. 87, pp. 393–4 (1954)." This is an article entitled "A New Anticholinesterase Oxamide," authored by Aaron Arnold, Albert E. Soria, and Fred K. Kirchner, the last named being the appellant. The compound disclosed therein on which the appealed claims are said to read is identified as "Win No. 8078."

2. We say that Arnold et al. is the sole reference relied on for two reasons. First, the Solicitor's brief says it is the only reference relied on by either the examiner or the board in rejecting the appealed claims. Second, the board took the position that the examiner based his rejection on Arnold et al. alone. In reading the Examiner's Answer, however, it seems to us that, as a practical matter, he might not agree with these interpretations of his basis of rejection. He developed an interesting theory of rejection which necessitated using an additional reference (Randall). The board found it "not * * * necessary to dis-

section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, *as to such invention,* as though filed on the date of the prior application * * *." [Emphasis ours.]

The argument here centers on the italicized words, there being no issue as to compliance with the omitted portion of the statute.

The first paragraph of section 112 reads:

"The specification shall contain a written description *of the invention,* and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention." [Emphasis ours.]

Comparing these two statutory provisions, it seems evident that appellant is entitled to the filing date of the parent application if the parent describes the invention *defined by the appealed claims* "in the manner provided by the first paragraph of section 112," above quoted.

The debate in this case has nothing to do with the description of the compounds themselves or the manner of making them. It has to do only with the recitations in the parent and the present applications which pertain to the *utility* of the compounds. All other matters have been eliminated from the case by admissions that the application at bar is properly designated a continuation-in-part application and, to quote the brief for the Patent Office, "that the compounds defined by the appealed claims are identified by name, structure and method of making in the parent application."

It has never been questioned in this case, so far as we are aware, that the claimed compounds are actually "useful" within the meaning of 35 U.S.C. § 101. Nor was any question raised as to either application being deficient in not pointing out or indicating a utility sufficient to comply with that section. In fact, if the sole reference is disposed of as a statutory bar, then the Patent Office is in the position of not now presenting any objection whatsoever to patentability of the claimed compounds on the application before us. As an indication of this position, one of the principal points in the board's opinion is that if the statement of utility which it found in the parent case had been "carried over" into the application at bar, then "there would have been basis for reversing the rejection of the appealed claims." The clear implication of that statement is that the statement of utility in the parent case was an adequate statement there, and would have been an adequate statement in the continuation-in-part application but for an allegedly inconsistent statement therein.

Let us then work back through the situation to see whether appellant appears on the face of things to have a statutory right to rely on the filing date of the parent application. The statement of utility in the parent case was an adequate statement to show utility of the compounds claimed. This would show compliance with the requirement of 35 U.S.C. § 101 that the invention be useful, which is the only statutory requirement mentioned by the board. It would also show compliance with In re Bremner et al., 37 CCPA 1032, 182 F.2d 216, a decision relied on by the Patent Office for the proposition that an application must include an indication of intended use. The Patent Office admits that the parent case disclosure sufficiently describes how to *make* the compounds and also that it

cuss Randall" under its own views as to why the claims should be rejected. It did not appear to appellant, nor does it appear to us, that the board accepted the examiner's theory of rejection. Under these circumstances, we must deal with the issue as it comes to us, through the Solicitor, from the board. For this reason we do not discuss the examiner's theories.

sufficiently describes the compounds themselves. It has raised no question about disclosure of how to use. Now, if it be that the compounds are "the invention," then it would seem that the invention is one which was "disclosed in the manner provided by the first paragraph of section 112" in the parent application, and that section 120 has been literally complied with, giving appellant the right to rely on the filing date of the parent application.

■ It is elementary patent law that one looks to the claims to find out what "the invention" is. As we stated at the beginning, all of the appealed claims define compounds per se. They make no mention of use and are in standard chemical terminology and of varying scope. As an example, we quote the shortest one:

"13. N,N'-Bis (2-diethylaminoethyl) oxamide bis (2-methoxybenzohalide)."

That compound is *the invention* defined by that claim. Claim 15 of the parent application was identical. There is no contention that the *supporting disclosure* of the parent case for it, and for the other appealed claims, did not comply in every respect with section 112, including the disclosure of utility. Nor has the Patent Office contended that the claimed compounds do not have the utility stated for them in the parent application.

■ On this state of facts there *appears* to have been full compliance with the requirements of section 120, and of section 112 incorporated therein by reference, and appellant *appears* to be entitled, by virtue of the statute, to the filing date of the parent application which overcomes the Arnold et al. reference. In the light of what is hereinafter stated, that is our decision.

We shall now examine the arguments of the board and of the solicitor as to why this should not be so and explain why we believe they are untenable.

*The Disclosures of "Utility"*

To consider the reasons for rejection presented to us by the Patent Office it is necessary to have before us the facts with respect to what is said in each of the applications about the usefulness of the claimed compounds. We shall somewhat simplify the facts by making certain assumptions, arguendo, adverse to appellant.

The parent application disclosed that the compounds of the appealed claims have *curarimimetic* (curare-like) activity. We assume, arguendo, that it did not disclose that those compounds have anticholinesterase activity (though it did make such disclosure as to the compounds of the claims which have been allowed). On the other hand, we agree with appellant that the parent case did not say that the compounds of the appealed claims do *not* have anticholinesterase activity.

The instant continuation-in-part application, with respect to the compounds of the appealed claims, discloses that they "possess significant and useful anticholinesterase activity." It also makes the following statements:

"Pharmacological evaluation of the compounds of the invention has established that these substances possess significant anticholinesterase activity *and curare antagonizing properties*, and are useful in anesthesiology for counteracting the effects of d-tubocurarine and in the treatment of myesthenia gravis. [Emphasis ours.]

\*    \*    \*    \*    \*    \*

"The compounds of the foregoing examples have an anticholinesterase activity of the type exhibited by neostigmine and hence may be used as skeletal muscle stimulants *and as antidote to curare*. [Emphasis ours.]

The instant application does not disclose, specifically, that the compounds of the appealed claims have curarimimetic activity.

## The Board's Rejection

As indicated in footnote 2, supra, while the board affirmed the examiner's *decision* that appellant could not have the benefit of the filing date of the parent application for the appealed claims, it did not adopt the examiner's reasons for so holding; and the Solicitor, while very briefly summarizing them in part, has not undertaken to urge the examiner's reasons to this court, restricting his argument to sustaining the rejection substantially on the theory first promulgated by the board. In this situation we deem it to be no part of our duty to answer arguments which have not been made before us and, by implication, abandoned by representatives of the Patent Office in positions of higher authority than the Primary Examiner.

The board's position is fully shown in the following quotation from its initial opinion:

"Had the disclosure of the parent case relative to curarimimetic activity of the compounds been carried over to this case we are of the view that there would have been basis for reversing the rejection * * *. However not only was that disclosure not carried over into this case but what *appears to us* to be a contradictory disclosure was inserted in this case. * * * [In] the instant specification we find a statement that the compounds of the invention possess significant "curare antagonizing properties" and again * * it is stated that the compounds may be "used * * * as antidote to curare." The situation then is that the only utility for the alkoxy species which is disclosed in the parent case is the curarimimetic activity, and that this utility is not incorporated in the disclosure of the present case but is in fact replaced by a disclosure of utility which appears to be *inconsistent with* and a *repudiation of* the disclosure in the parent case. We refer to the disclosure in this case that the alkoxy compounds have curare antagonizing or anti-dote properties. A disclosure of utility is necessary for a complete disclosure of a new chemical compound (35 U.S.C. 101). Where the utility disclosed in this case is *not only different from but also inconsistent with* the utility disclosed in the parent case we are of the opinion that the instant case is not entitled to the benefit of the filing date of the parent case. *Ex parte* Scudi et al. [P.O.Bd.App.1959], 748 O.G. 878, 123 USPQ 504." [Emphasis added.]

We note that the prior board decision in the Scudi case contains similar reasoning. We also note that in an interference, Biel v. Coan, 130 USPQ 241, decided shortly after the Scudi case and involving an alleged change in utility disclosure between a parent and a continuing application, the Board of Patent Interferences held that "the disclosure of utility need not be the same" to get the benefit of the parent filing date and held the Scudi case "not controlling."

We would also like the thought to be carried along in this discussion that we are not dealing with *actual* utility, which is an inherent characteristic of every chemical compound and may take many different forms for a given compound, but only with what is *disclosed* in an application *about* such utility, and changes in such disclosure, rather than in utility itself, which is immutable.

Our reading of the board's initial opinion leads us to the conclusion that the basic reason for denying benefit of the parent filing date was the board's fact finding of inconsistency and repudiation. We felt some insecurity as to the correctness of this interpretation after reading the board's opinion on reconsideration, for reasons we shall explain. But the solicitor reestablished our confidence in our original interpretation of the board's initial opinion by the following passage in his brief:

"* * * it is important to note that their [the board's] denial of the benefit of the filing date of the parent case is based upon the finding

that the indicated utility of the same species of compound is inconsistent with and a repudiation of that disclosed in the parent case."

Not only does the Solicitor thus confirm our interpretation but he makes it even more definite in continuing the rationale which he there found, in saying:

"In the light of these established principles [requiring indication of utility in an application to render it allowable], it is submitted that the statement in the parent case of the intended utility, which appears now to be *erroneous,* because of the later statement of an inconsistent indication of usefulness in the involved application, *should be considered as though,* [sic] *it had never been presented in the parent application."*

[Emphasis ours.]

This is a suggestion to regard, ex post facto, the parent case utility statement as a nullity. The board did not go so far in words, but its decision has the same effect.

When the appellant received that decision, he filed a request for reconsideration accompanied by evidence to disprove the factual assumption of inconsistency which underlay the board's decision. This evidence was in the form of an affidavit by Alonzo M. Lands, Ph.D. in physiology, University of Kansas, with 12 years of university teaching experience and 17 years in research, since 1947 head of the Pharmacodynamic Section of the Biology Division of the Sterling-Winthrop Research Institute at Rensselaer, New York. Attached to the affidavit were two 1955 publications.

To summarize the evidence, it is to the effect that the same compound can

possess curarimimetic activity and anticholinesterase activity and the ability, in proper dosage, to be a curare antagonist by virtue of its anticholinesterase activity.[3] Specifically the material known as Win 8078, which is, as the Solicitor admits, the compound of the Arnold et al. reference and of Example 2 of the instant application and Example 5 of the parent case, possesses these properties.[4] We find the evidence persuasive that the supposed inconsistency which appeared to the board is nonexistent. This removes the factual basis for its original decision and without that support it falls.

When faced with this evidence, the board accepted it for consideration "as an argument supplementing the arguments in the petition" under M.P.E.P. ¶ 1212 and In re Martin, 33 CCPA 842, 843, 154 F.2d 126, 69 USPQ 275, but shifted its ground so as to be able to say that there is "no basis in petitioner's arguments for altering our decision."

This new position adopted by the board was that the disclosure in the parent case contained "deficiencies" in that it failed to disclose that the claimed compounds "may function both as curarimimetic agents and as anticholinesterase or curare-antagonizing agents depending upon whether they are used in large or in minute dosages." Or, to adopt other language from its opinion denying reconsideration, it held that appellant "could not rely on" the parent case because it did not disclose *"the* utility asserted in the instant application." (Emphasis ours.) It thus completely abandoned its inconsistency theory and at the same time promulgated a new one. Notwithstanding these events prior to the appeal to this court, the Solicitor

---

3. One of the 1955 publications, that of James O. Hoppe, Ph.D., entitled "Observations On The Potency Of Neuromuscular Blocking Agents With Particular Reference To Succinycholine," discusses the mechanism of action of curarimimetic drugs. This article indicates that the type of "neuromuscular blockade" produced by *d*-tubocurarine, one of the curare alkaloids, "is susceptible to

reversal by means of anticholinesterase drugs." It appears therefore that since an anticholinesterase drug acts to *reverse* the action of a curarimimetic drug, that the former may aptly be classified as curare antagonistic.

4. This fact also is clearly shown in the Hoppe publication.

here has attempted only to sustain the original theory of the board and makes no effort to support the thesis that the utility disclosed in the later application must also be found in the disclosure of the parent case in order to make it possible to have the benefit of its filing date under section 120. His effort to sustain the existence of factual inconsistency or to answer the evidence submitted by the appellant is too unpersuasive for detailed discussion and rests ultimately on the proposition that we should disregard the Lands affidavit because the publication relied on therein was published long after the filing of the parent case. We see no logical connection between that fact and the fact of inconsistency of disclosure.

Appellant's brief before us correctly points out:

"Example 4 of the parent application (R-176) lists specific data showing 'curarimimetic activity' and 'anticholinesterase activity' for the identical compound. While this compound is not within the scope of the instant claims, Example 4 clearly shows that 'curarimimetic activity' is not inconsistent with 'anticholinesterase activity' else the same compound couldn't possess both activities."

Appellant also refers to the commonplace analogy of ethyl alcohol, the alcohol present in potable alcoholic beverages, pointing out that there would be no inconsistency in describing it as both a stimulant and a sedative. Notwithstanding the Solicitor's attempt to sustain the board's initial position that the parent case utility disclosure was repudiated by a later inconsistent disclosure, and the filing of his brief after appellant's brief and in answer thereto, he has not answered these arguments, nor even acknowledged their existence. This failure becomes even more significant viewed in the light of the fact that at oral argument the Solicitor continued to maintain the position that the utility disclosure of the parent case was *completely negated* by

the disclosures of the later application. When asked by the court whether the issue was not that the two applications must disclose the *same* utility, he said that was *not* the issue and told the court that it was necessary to go into the fact issue of inconsistency. Thus did he fail to support the position taken by the board in its second opinion on the petition for reconsideration.

Always lurking in the background of the argument of the Patent Office is an echo of a theory which was initially propounded by the examiner but never really pursued before us, namely, that "the invention" in the case of a new chemical compound is not the compound itself (as a "composition of matter" within the contemplation of section 101, 35 U.S.C.), but is a compound *coupled with* a disclosed use. This interesting metaphysical concept led the examiner to take the position that a disclosure of compound X having anticholinesterase activity is a disclosure of a *different* "invention" than compound X with curarimimetic activity even though *the claims* are directed to compounds per se without a use. This was the reasoning of the Scudi case, cited by the board, and was urged by Coan in the Biel v. Coan case. We think the Board of Interference Examiners gave a very good answer in the latter case when it said:

"Coan's view is untenable and if adopted could lead to extraordinary results. Thus, the same compound could be repatented as often as a new use could be found, merely on the ground that the invention was different and even an infringer of a patented compound could escape by the same route."

What might be termed the examiner's "complete invention theory" in chemical cases, confuses, it seems to us, the invention itself which is the subject matter claimed—in cases of this type the new chemical compound—with one of the factors which is taken into consideration in determining whether the invention is or is not *patentable* from the

standpoint of meeting 35 U.S.C. § 103. As was said in Biel v. Coan, where the claim contains no "use" limitation, "we know of no authority, theory or reason" for requiring that a parent case disclose the same utility as a later application to entitle the latter to the benefit of the filing date of the parent.

 Assuming the common inventorship, copendency, and cross-reference required by section 120, that section further requires only that the invention be disclosed in the parent application in such manner as to comply with the first paragraph of section 112 and *be* the same invention as that disclosed in the later application. It does not require that the invention be described in the same way, or comply with section 112 in the same way, in both applications. And to determine what is the invention under consideration, one must be governed by the claims of the later application, because it is there one must look to determine what invention the "application for patent" referred to in the opening words of section 120 is for.

The decision of the board is reversed.

Reversed.

KIRKPATRICK, Judge, with whom WORLEY, Chief Judge, joins (concurring).

I concur with the result, basing my concurrence on *my interpretation* of the affidavit submitted that the word "curarimimetic" is equivalent to "neuromuscular blocking agent" and, in that sense, ambiguous. Therefore, it is neither a change of utility nor a contradiction of utility but a clarification for the applicant to assert that his drugs have anticholinesterase activity and are antidotes for d-tubocurarine since in the prior art neuromuscular block was accomplished by drugs acting such as d-tubocurarine for which anticholinesterase drugs are antidotes and by drugs acting in another manner not fully understood for which anticholinesterase drugs were not antidotes but, in fact, active agents, depending on the dosage.