INDIANA GENERAL CORPORATION, Appellant,

v.

LOCKHEED AIRCRAFT CORPORATION, Appellee.

No. 22088.

United States Court of Appeals Ninth Circuit.

Nov. 25, 1968.

---

Wm. J. Stellman (argued), of Hofgren, Wegner, Allen, Stellman & McCord, Chicago, Ill., Harris, Kiech, Russell & Kern, Los Angeles, Cal., for appellant.

Harry G. Weissenberger (argued), of Mellin, Hursh, Moore & Weissenberger, San Francisco, Cal., for appellee.

Before MERRILL and CARTER, Circuit Judges, and SMITH,* District Judge.

JAMES M. CARTER, Circuit Judge:

This is an appeal from a summary judgment entered in a patent case dismissing the action, based on findings of fact and conclusions of law and in substance finally adjudicating claims 1 through 4 of the patent in suit.

The action was for injunction and damages from infringement. The patent in suit, #2,981,689, granted April 25, 1961, based on an application by Dr. E. Albers-Schoenberg, was issued to Steatite Research Corporation, and by mesne assignments, appellant Indiana General Corporation acquired all right, title and interest to the patent. The patent has six claims. Four claims (#1, 2, 3 and 4) were disposed of by the summary judgment.

### The Questions Presented

The issues presented concern whether or not the patent in suit is a continuation of a prior patent application, and whether the appellant is entitled to a filing date of the earliest filed application, containing subject matter in common with the subsequent application which resulted in the patent in suit; and whether a sale of a product and disclosures to the public, after the date of the earliest filed application, invalidate the patent. The determining question of this appeal is whether in a patent for a composition of matter, disclosures of a *use or a property* as contrasted with the disclosures of physical composition or a range of proportions of matter, are the true subject matter of the patent.

The ground of the motion for summary judgment was that there was no genuine issue as to the following facts, viz.: the invention and its use were described in printed publications in this country and that the invention was in public use, on sale, and sold in this country, all more than one year prior to the earliest date to which the appellant was entitled, as to

* Hon. Russell E. Smth, United States Judge, District of Montana, sitting by designation.

the patent in suit; and that therefore the patent was void as being in contravention of 35 U.S.C. § 102(b) (1964).

Appellant claims that the critical date is December 28, 1948, the date of the first application No. 67,752. Appellee concedes a date of October 30, 1951, the date of application No. 253,779, but contends that the original date of December 28, 1948 (No. 67,752) is not available to appellant. The trial court found that the second application No. 253,779 and each succeeding one states it is a continuation in part of the first application No. 67,-752.

35 U.S.C. § 101 (1964) reads, "Whoever invents or discovers any new and useful process, machine, manufacture, or *composition of matter*, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title." [emphasis added]. 35 U.S.C. § 112 (1964) provides in part, "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

### The Factual Background

The first application, Serial No. 67,752, filed on December 28, 1948 by Dr. E. Albers-Schoenberg, contained a written description of a manganese-magnesium ferrite material have dielectric properties, high resistivity, and high insulating properties. The application describes how to make the product by grinding the ingredients in specified proportions and molding and firing the mix at specified temperatures. Three examples of manganese-magnesium ferrites are specifically set forth, including specific proportions of the ingredients, the method of preparing them and the electrical and magnetic characteristics resulting. Example 3 is identified as Ferramic A-34, (also called Ferramic A, or A-34).

On May 10, 1949, Ferramic A-34 was first manufactured and sold commercially by appellant's predecessor. In December of 1949, appellant's predecessor caused to be published in the trade magazine *Electrical Manufacturing*, an article which included a number of photographs of oscillograms showing hysteresis loops of a number of magnetizable manganese-magnesium ferrites, one of which was the hyteresis loop of Ferramic A-34. It is conceded that the composition of ingredients of Ferramic A-34 was not specified in the article. All magnetizable materials, when magnetized, possess a hysteresis loop as an inherent characteristic. The hysteresis loop of Ferramic A-34 shown in this publication was substantially square in shape.

Some time in the summer of 1950, one W. N. Papian of Massachusetts Institute of Technology requested and was supplied by appellant's predecessor with samples of Ferramic A-34 for use in conjunction with research concerning an electronic circuit he was developing. The results of Mr. Papian's experiments were incorporated in a thesis entitled "A Coincident-Current Magnetic Memory Unit" dated August 31, 1950. On or about October 9, 1950, Mr. Papian's thesis was filed in the M. I. T. library. There is no record available to show how long the processing of the thesis took before it became available to the public, but the present librarian of the M. I. T. library stated that a thesis so filed would normally be available to the public within a week or ten days after being filed. It is conceded that the Papian thesis did not disclose the chemical composition nor the ingredient proportions of Ferramic A-34.

On October 30, 1951, Dr. E. Albers-Schoenberg filed a second application in the United States Patent Office, Serial No. 253,779. This application was stated to be a continuation in part of the parent application Serial No. 67,752 filed December 28, 1948. Application Serial No. 253,779 disclosed a different range of ingredients of manganese-magnesium ferrites. This new range of ingredient mixes included part of the range described

in the 1948 application. Included as Example 1 was the specific formulation of Ferramic A–34. This second application pointed out a further property of manganese-magnesium ferrites, namely, that certain of these materials possess a square hysteresis loop when magnetized. Ferramic A–34 was one of these and the square hysteresis loop property is inherent in that material.

On February 7, 1952, Dr. E. Albers-Schoenberg filed a third patent application in the United States Patent Office, Serial No. 270,351. This application further modified the range of ingredients of manganese-magnesium ferrites, which range, however, still included Ferramic A–34.

On July 12, 1954, Dr. E. Albers-Schoenberg filed application Serial No. 442,534, narrowing somewhat the range of ingredients of Serial No. 270,351, but still including Ferramic A–34. This application matured into the patent in suit. The application states on its face that it is "a continuation-in-part of application Serial No. 270,351 of February 7, 1952, which in turn is a continuation-in-part of application Serial No. 253,779 filed October 30, 1951, which itself is a continuation-in-part of application Serial No. 67,-752 filed December 28, 1948."

Claim 3 of the parent application Serial No. 67,752 filed December 28, 1948, read on Ferramic A–34, and claims 1 and 3 of the patent in suit also read on Ferramic A–34.

Summarizing the history, the first application contained a full disclosure of the composition of Ferramic A–34 as one ferrite among several within a specified range of manganese-magnesium ferrites. The second application carried forward the specific Ferramic A–34 ferrite material. There was also disclosed in the second application certain manganese-magnesium ferrites whose compositions were outside the range of the 1948 application. The range of the second application included Ferramic A–34.

The third application was filed in order to expand slightly the range of the manganese-magnesium ferrites of the immediately previous application. The expanded range still included Ferramic A–34, i. e., part of the range of the 1948 application, as well as all of the range of the second application. The fourth application merely narrowed somewhat the range of the manganese-magnesium ferrites of the third application but still included Ferramic A–34.

## Claims 1 and 2

■ A continuation in part application is entitled to the filing date of the parent application to the extent of subject matter common to both. Asseff v. Marzall, 88 U.S.App.D.C. 358, 189 F.2d 660 (1951), cert. denied 342 U.S. 828, 72 S.Ct. 51, 96 L.Ed. 626 (1951); followed in Goodyear Tire and Rubber Co. v. Ladd, 121 U.S.App.D.C. 275, 349 F.2d 710 (1965), cert. denied 382 U.S. 973, 86 S.Ct. 536, 15 L.Ed.2d 465 (1966).

Continuation in part applications are also provided for by statute. 35 U.S.C. § 120, reads:

"Sec. 120. Benefit of earlier filing date in the United States.

"An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application. * * * "

Appellee expressly admitted in reply to interrogatories, " * * * that a disclosure of the composition of Ferramic A–34 was continuously before the patent office from December 28, 1948 to April 25, 1961." December 28, 1948 was the filing date of application Serial No. 67,-752. April 25, 1961 was the date of issue of the patent in suit. Thus at least Fer-

ramic A–34 was a composition of matter carried over from the earliest application. The court so found.

The trial court also found:

"34. Since application serial No. 67,-752 did not disclose the square hysteresis loop properties of the magnesium-manganese-ferrite material therein disclosed nor the use thereof in a computer, the patent in suit is not entitled to the filing date of such application."

Here the learned and experienced trial judge was in error. The memorandum of decision shows the extensive work he did on the case. But he accepted the contention of appellee that the hysteresis loop and the use thereof in a computer had to be disclosed in application serial No. 67,752 or there could be no relation back.[1]

The court found and the appellee conceded that the manganese-magnesium-ferrite material disclosed in 1948 application possessed other useful properties.

"11. Certain magnesium-manganese-ferrites whose ingredient proportions are disclosed in the patent in suit and in said application Serial No. 67,-752 inherently have high resistivity as compared to metals, i. e., they are very poor conductors of electricity as compared to metals. This property of high resistivity makes them far superior in magnetic memory systems than the previously known laminated metal materials some of which also have square hysteresis loops."

The court also found:

"26. * * * This composition of Ferramic A–34 was disclosed in application Serial No. 67,752 as Example

3 and as Example 1 in application Serial No. 253,779. Ferramic A–34 inherently possesses a square-loop hysteresis."

The fact that an inventor of a specific compound subsequently discloses in a continuation in part application an additional property or use of the compound or composition does not deprive the inventor of the filing date of the first application disclosing the compound. In re Kirchner, 305 F.2d 897, 49 C.C.P.A. 1234 (C.C.P.A.1962) is squarely in point. Judge Rich, a recognized authority in the patent field, held that the mere fact Kirchner suggested a new and even different property or use for his invention would not prevent the filing date of the first application disclosing the compound from being the effective date of the patent.

The reasoning of Judge Rich is worth stating in detail.

"This _ew position adopted by the board was that the disclosure in the parent case contained 'deficiencies' in that it failed to disclose that the claimed compounds 'may function both as curarimimetic agents and as anticholinesterase or curare-antagonizing agents depending upon whether they are used in large or in minute dosages.' Or, to adopt other language from its opinion denying reconsideration, it held that appellant 'could not rely on' the parent case because it did not disclose '_the_ utility asserted in the instant application.' [Emphasis ours.] * * *

Always lurking in the background of the argument of the Patent Office

---

1. On petition for rehearing in the court below, the trial judge was again persuaded by appellee and adhered to the original erroneous premise, stating in a memorandum, "The plaintiff says a square hysteresis loop is a property of the composition. That being so, that _property—and its use_—must have been disclosed in application No. 67,752 in order to enable the plaintiff to be entitled to the date of its filing, December 28, 1948—more than 12 years before the is-

suance of the patent in suit." [emphasis added].

Having led the trial court into error, appellee now states in its brief—"Appellant devotes the major part of its brief to the proposition that a new use of an old thing simply cannot be patented unless it is claimed as a process (which is not the case here). There is little we can say to improve on appellant's argument in that respect."

is an echo of a theory which was initially propounded by the examiner but never really pursued before us, namely, that 'the invention' in the case of a new chemical compound is not the compound itself (as a 'composition of matter' within the contemplation of section 101, 35 U.S.C.), but is a compound coupled with a disclosed use. This interesting metaphysical concept led the examiner to take the position that a disclosure of compound X having anticholinesterase activity is a disclosure of a different 'invention' than compound X with curarimimetic activity even though the claims are directed to compounds per se without a use. This was the reasoning of the Scudi case [123 U.S.P.Q. 504], cited by the board, and was urged by Coan in the Biel v. Coan case [130 U.S.P.Q. 241]. We think the Board of Interference Examiners gave a very good answer in the latter case when it said:

'Coan's view is untenable and if adopted could lead to extraordinary results. Thus, the same compound could be repatented as often as a new use could be found, merely on the ground that the invention was different and even an infringer of a patented compound could escape by the same route.'

What might be termed the examiner's 'complete invention theory' in chemical cases, confuses, it seems to us, the invention itself which is the subject matter claimed—in cases of this type the new chemical compound—with one of the factors which is taken into consideration in determining whether the invention is or is not patentable from the standpoint of meeting 35 U.S.C. § 103. As was said in Biel v. Coan, where the claim contains no 'use' limitation, 'we know of no authority, theory or reason' for requiring that a parent case disclose the same

utility as a later application to entitle the latter to the benefit of the filing date of the parent." (Id. at 902–904).

In *Kirchner,* supra, the property and use, shown in the continuation in part application, was totally new; the property and use shown in the parent application was dropped from the new application. The court held the applicant was entitled to the first filing date. A fortiorari the same rule applies in this case.

■ The phrase in the claims "having a substantially square hysteresis loop" is a description of a property of the composition of matter described in the patent.[2] The Court of Customs and Patent Appeals in an interference involving the application which later became the patent in this suit specifically so found. Hegyi v. Albers-Schoenberg, 280 F.2d 859 (C.C.P.A.1960). The Court stated:

"Here the count is for a ferrite body having a substantially square hysteresis loop and being composed of ingredients falling within prescribed ranges. It is not limited to use in a magnetic memory of the coincidence current type, or in a magnetic switch or even as a magnetic core. No particular use or operative connections are required. It is a broad count drawn to an article. * * *" (Id. at 862).

Therefore, if the composition of the new matter itself was disclosed in the 1948 application, an intervening publication of a *new property,* square hysteresis loop, and a *new use* of the same matter cannot act to invalidate the patent resulting from the subsequent continuation in part application which did disclose the newly discovered property and use. The properties of a given substance are immutable.

■■ Further, a compound or article previously patented cannot be the object of another patent simply because some-

2. Cf. "We would also like the thought to be carried along in this discussion that we are not dealing with *actual* utility, which is an inherent characteristic of every chemical compound and may take many different forms for a given compound, but only with what is *disclosed* in an application *about* such utility, and changes in such disclosure, rather than in utility itself, which is immutable."

In re Kirchner, 305 F.2d 897, 901, 49 C.C.P.A. 1234 (1962).

one has discovered a new use for it. Old Town Ribbon & Carbon Co. v. Columbia Ribbon & Carbon Mfg. Co., 159 F.2d 379 (2 Cir. 1947); In re Kirchner, 305 F.2d 897, 903 (C.C.P.A.1962); In re Shackell, 194 F.2d 720, 39 C.C.P.A. 847 (1952); In re Thuau, 135 F.2d 344, 347, 30 C.C.P.A. 979 (1943). A fortiori a new use cannot operate to invalidate a prior patent application.

Having abandoned the prime contention on which it prevailed in the district court, appellee falls back on prior art and particularly an article by one Snock, published in 1936, and 35 U.S.C. § 102(a). The trial court had found,

> "28. Fired ferromagnetic bodies of magnesium-manganese ferrites *(though with ingredient proportions lying outside the range disclosed in either Serial No. 67,752 or the patent in suit)* were known many years prior to the filing of application Serial No. 67,752." [emphasis added.]

This is an implied finding that the Snock article did not disclose the range of the patent in suit.

There is no conclusion of law on the Snock article as prior art. It appears that the summary judgment was based on the erroneous theory that the "new property and use" had not been disclosed in Serial No. 67,752; therefore not 1948 but October 30, 1951, the date of the application which first disclosed the "new property and use," would be the effective date of the patent in suit. Further, the summary judgment was based on the grounds that, (1) the sale by appellant's predecessor of Ferramic A–34 on May 10, 1949, (2) the December 1949 publication of the trade magazine *Electrical Manufacturing* containing the article by the Vice President of applicant's predecessor and (3) the filing, on or about October 9, 1950 of a copy of a thesis by W. N. Papian with the M. I. T. library, operated to anticipate the 1951 application.

The trial court could not on motion for summary judgment on the documentary record here, resolve the question of anticipation by prior art under 35 U.S.C. § 102; nor can the trial court on the record here, judge the character and scope of the invention. Allegheny Ludlum Steel Corp. v. Westinghouse Electric Corp., 150 U.S.P.Q. 95 (D.D.C.1966), states:

> "The invention relates to iron alloys, specifically to use of boron in order to make the alloy ductile. The specific invention consists in the use of a specified range of proportions of boron in order to produce the desired quality without any adverse effects. The patent was issued on an application that was a continuation of a prior application.
>
> For reasons that need not be reviewed here, the validity of the patent depends largely on the question whether the owner of the patent is entitled to the benefit of the earlier filing date of the original application. This, in turn, depends very largely on the degree to which the use of the particular quantities of boron disclosed in the patent and the reasons for it, constitute an invention separate and apart from that disclosed in the original application. This is a matter as to which expert testimony would be admissible. So, too, testimony as to the history of the invention, as well as its relation to the prior art and its commercial utilization, would be relevant. Similarly, *the nature of the disclosure in the original application is a matter for expert testimony*, since the question is what would be understood by a man skilled in the art. Disclosures of specifications are not intended for the layman. There are other less important topics concerning which oral testimony would be admissible. The issues cannot be determined by the Court by a mere reading of the documents. Bridgeport Brass Co. v. Bostwick Laboratories, 2d C., 181 F.2d 315, 85 USPQ 89; Hazeltine Research, Inc. v. General Electric Co., 7th C., 183 F.2d 3, 5, 86 USPQ 233, 235." [emphasis added]

■■ Only when there are no issues of material fact in dispute, can a court grant summary judgment. Cee-Bee Chemical Co. v. Delco Chemicals, Inc., 263

F.2d 150 (9 Cir. 1959). Here there is obviously a dispute as to anticipation by the Snock article. The application of 1954 which later became the patent in this suit was initially rejected by the examiner, relying in part on the Snock article. (R. 819). However, the patent was subsequently granted. This indicates at least the Commissioner of Patents thought that the Snock article did not anticipate the patent in suit. This is a dispute of fact, not of law. Therefore, summary judgment even if based on this ground was improperly rendered.

### Claims 2 and 4

The trial court correctly found that the subject matter of claims 2 and 4 was not disclosed in the first filed application, but covered the preferred range of manganese-magnesium ferrites of the patent in suit. Appellee admits that Ferramic A–34 is not within the area of components shown in claims 2 and 4, and that its contentions as to use and publication after 1948 are not "directly fatal to claims 2 and 4." It contends instead that the invalidity of claims 1 and 3 carries with it, the invalidity of claims 2 and 4.

Since we have held that claims 1 and 3 were not invalidated on the grounds stated by the trial court, then appellee's contention as to claims 2 and 4 falls.

Moreover the trial court held as a conclusion of law that claims 2 and 4 differed only in degree and hence were invalid. There was no finding of fact but treating the conclusions as a finding, there was no evidence to support the finding. Mr. Snyder testified that the hysteresis loops generated by the materials covered within the range of claims 2 and 4 were squarest within the range of proportion of composition disclosed *and that the difference in squareness was a matter of degree.* This was not testimony as to a difference in the proportions of the composition. To say that two compositions of matter differ only in degree because one of their properties differs slightly is an erroneous conclusion.

We are not passing on the validity of the patent in suit or the defenses that may be urged by appellee at a trial on the merits. Our decision is limited to the holding that on the record before us, the district court erred in denying appellant the benefit of the earlier date for the continuation in part application, and in granting the motion for summary judgment.

Judgment is reversed and the cause remanded to the district court.