**Thomas A. O. GROSS,**
**Plaintiff-Appellant,**

v.

**GENERAL MOTORS CORPORATION,**
**Defendant-Appellee.**

**No. 75–1064.**

United States Court of Appeals,
First Circuit.

July 28, 1975.

46

Roger P. Stokey, Boston, Mass., with whom Alix Smullin and Goodwin, Procter & Hoar, Boston, Mass., were on brief, for plaintiff-appellant.

D. D. Allegretti, Chicago, Ill., with whom Molinare, Allegretti, Newitt & Witcoff, Chicago, Ill., Warren E. Finken, John C. Evans, Detroit, Mich., Edgar H. Kent, and Fish & Richardson, Boston, Mass., were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff-appellant Gross brought suit for patent infringement against General Motors, claiming that his patent, No. 3,047,040, issued on July 31, 1962, was infringed by a shock absorber—or a part thereof—marketed by GM under the name "Pleasurizer" and "Pliacell." GM denied infringement and counterclaimed, seeking a declaration of invalidity. GM prevailed below, the district court finding both non-infringement and invalidity.

The plaintiff's patent describes a device, capable of bearing a varying load, the device consisting of a container having movable walls and filled with a gas having the property of reducing significantly in volume under pressure while providing yielding resistance and not generating substantial external heat—referred to as a low gamma gas of no more than about 1.25.[1] The gas, having a complex molecular structure, is also described as uncondensible at normal operating pressures and temperatures. The only embodiment illustrated in the patent conveys the concepts simply: a cross section of an automobile tire filled with a low gamma gas.[2] The invention, as the first paragraph of the application states, "relates to pneumatic load bearing devices such as pneumatic tires and pneumatic springs which depend upon the pressure of a gas to provide a yielding support for a load." Plaintiff filed his application in January, 1956. After various proceedings, it was rejected in September of 1958. Pending an appeal to the Board of Appeals, plaintiff abandoned his application on May 12, 1960, but had, in the meantime, on January 25, 1960, filed a continuation-in-part application. After further amendments and rejections, the examiner suggested what became the final language of the claims: "and being uncondensible at temperatures and pressures within the container encountered during normal operations of the device". The patent was then issued.

Defendant's accused device is a shock absorber which, like many others, contains an air space in the oil reservoir to accommodate oil displacement during the stroking of the piston. Unlike others, however, its absorber has a gas-filled nylon envelope or cushion surrounding the oil filled chamber, thus physically separating the two substances. The gas used by GM in the cushion is Freon-13, which is a low gamma gas. This device is revealed in the patent assigned to GM by an employee, Stultz, No. 2,997,291, filed February 18, 1959 and issued August 22, 1961. It had been described in printed publications, "Automotive News", "Steel", and "Motor Magazine" over one year prior to the filing of the continuation-in-part application on January 25, 1960, and had been used in the 1959 Cadillac and Corvette.

The district court, after a seven day trial, held that plaintiff's patent could not receive the benefit of the earlier application date of January 9, 1956 since it

---

1. Gamma in this context connotes the ratio (Cp/Cv) of the specific heat of a gas under constant pressure to the specific heat of that gas at constant volume.

2. More accurately, representative claim 1 is: "A pneumatic yieldable load bearing device comprising an enclosed container having wall portions movable and effective to vary the volume of the container, said portions supporting a load tending to move said portions, and a gas within said container, said gas being under a pressure effective to support said load and having a ratio of Cp/Cv of no more than about 1.25 and being uncondensible at temperatures and pressures within the container encountered during normal operation of the device."
Other challenged claims 2 and 4 do not significantly differ.

found that the prior application did not expressly or impliedly contain the "crucial limitation" that the low gamma gas used in the device must be uncondensible during normal operations. This being so, it held claims 1, 2, and 4 invalid because the accused device—assuming it infringes—had been described in publications and had been publicly sold more than a year before the later filing date of January 25, 1960. It also held that the claims were invalid for overbreadth, lack of utility, arbitrary selection of the maximum gamma, and obviousness. Finally, it held plaintiff's patent not infringed by defendant's accused device.

The district court very properly dealt with both patent validity and infringement. It also gave its conclusions on all aspects of validity. For us the determinative factor is the court's conclusion, buttressed by its factual findings, that the plaintiff's patent claims did not disclose "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The plaintiff in his patent asserted that the use of low gamma gases in tires would produce "a noticeably smoother ride on rough surfaces." While the patent recited that tests on tires had demonstrated this result, there was no evidence concerning these tests. Moreover, the plaintiff admitted at trial that while at the time he sought his patent, he had thought of its usefulness as applied to tires, any improvement in riding comfort was too small to justify the use of his invention to obtain a smoother ride. He had previously acknowledged this in a 1957 letter to the Renault company; in a 1956 letter to the U. S. Rubber company, which reported negative results from its evaluation; and in a published article in 1964. Nor did plaintiff present any evidence that low gamma gas in a shock absorber provide a compliant resistance that resulted in a better ride. It is true that plaintiff's expert Merrill found the concept of the patent interesting and promising, but he had not conducted or observed any experiments.

■ On the other hand, defendant's witness, credited by the court, testified that his tests comparing conventional shock absorbers using a free air space with those utilizing low gamma gas revealed no difference in riding comfort. Plaintiff makes much of testimony that GM used its Pleasurizer device on its "high performance" cars such as an "estate wagon", but not on others, arguing that this selective preference is intrinsic proof of the usefulness of his invention. The reason ultimately given for the selective use of the Freon-filled Pleasurizer—which the court could credit—was that, in vehicles expected to be subjected to hard treatment, aeration of the lubricant in the shock absorber was an acute problem making advisable in such cars the use of the separating cushion containing the Freon. While plaintiff may suspect a different motive, it did not appear in the evidence.[3]

Unlike some cases, there is no secondary evidence supporting an inference of utility. Depositions and testimony on behalf of defendant, addressed to the issue of prior use revealed that it had long been and still was a common practice in the southwest for farmers to "air up"

---

3. Plaintiff also seeks to draw record support for the usefulness of his invention from the calculations of his expert of the compression in a shock absorber chamber at the end of the stroke when nitrogen is used and that when Freon-13 is used. The expert concluded that compression in the nitrogen cushion would be 28.46 pounds per square inch and in the Freon cushion 26.31 pounds per square inch, a difference of 2.15 pounds. Plaintiff argues that, since GM at one point had redesigned its gas cushion to allow more volume and thus obtain a reduction in pressure of .9 pounds per square inch, the greater reduction in compression attributable to the use of low gamma Freon was of significant utility. This is legitimate argument, but the court, having before it testimony that riding tests had shown no difference between air utilizing and low gamma utilizing shock absorbers, was not obliged to give it critical weight.

flat tires on their vehicles with propane, a low gamma gas, when air was not available. But the motive was convenience in an emergency. There was no suggestion that operating comfort was improved. Nor could defendant's development of its own Pliacell and Pleasurizer absorber be said to lend substance to the utility claimed by the patent through imitation. Defendant's sole motive on this record in choosing Freon-13 as the gas for its cushion was to find a gas that would not permeate through the nylon lining, as air or nitrogen ultimately did. There was no evidence of motive to choose a gas because of the theoretical reaction described in the Gross patent.

Finally, there was no evidence of commercial success attributed to the device described in the Gross patent. Despite the fact that, as plaintiff admitted, he "tried everywhere," he received negative responses from nearly a dozen companies. All plaintiff could show was three companies which were using an emergency spare tire inflator kit which does not seem to us to exploit the central thrust of his invention.

 The district court paid due deference to the statutory presumption of validity. But the Patent Office had not had before it the evidence of lack of utility, including the admission of the plaintiff. The issue of lack of utility is a factual one, *Lorenz v. General Steel Products Co., Inc.,* 337 F.2d 726 (5th Cir. 1964); *Manhattan Book Casing Mach. Co. v. E. C. Fuller Co.,* 274 F. 964, 967 (S.D.N.Y.1912) (L. Hand, J.). While testing may not be required where the teaching is simple and compelling to those skilled in the art, *Eastern Rotorcraft Corp. v. United States,* 384 F.2d 429, 181 Ct.Cl. 299 (1967); *Application of Blake,* 358 F.2d 750, 53 CCPA 1057 (1966), the patent's workability must be established. The amount of testing necessary depends upon the particular invention and whether the tests conducted show the invention will work as intended in its contemplated use, *Eastern Rotorcraft Corp., supra* at 431; *Baxter & Bros. v. Great Atlantic & Pacific Tea*

*Co., Inc.,* 352 F.2d 87 (1st Cir.), *aff'g,* 236 F.Supp. 601 (D.Me.1964); *see also Anderson v. Natta,* 480 F.2d 1392 (C.C.P.A. 1973). On the state of this record, we cannot say that the district court was clearly erroneous in concluding that the Gross patent was not a "useful" invention and therefore invalid under 35 U.S.C. § 101.

Had there been sufficient evidence that the device described in Gross' patent could achieve its objectives in practice, we might have taken a different view of the court's other conclusions as to invalidity. We would have dealt with a device—i. e., a container with flexible walls filled with a low gamma gas which would be supportive in repose and yet capable of yielding resistantly to dynamic force—which was useful in providing both steady support to a load and a damping or minimizing of the shocks and jolts encountered in a ride or other dynamic operation. The facts that the thermal-pressure nature of low gamma gases had been revealed in a text and that the patent limitation of a gamma of "about 1.25" was a somewhat arbitrary point in a range might not be sufficient reason to deny validity. But we do not need to consider such issues further.

With reference to the issue of infringement, the district court held that the accused device, whether it be considered the entire Pleasurizer shock absorber or the gas bag within, did not support a static load or, indeed, any load. It noted that the body and frame of the vehicle were supported by steel or pneumatic springs and that the accused device was "incapable of supporting the spring mass". The court relied on testimony of defendant's witnesses, who also carried out an experiment in court, that no load was supported.

We find this issue a very close one. There is language in the patent specifications contemplating a device capable of providing both static and dynamic support. There is also language stating that "the object of the present invention is to provide a pneumatic load bearing device of increased softness to sudden

displacements by which shocks creating suddenly increased load forces are better absorbed". A suddenly increased force exerted against the cushion in a shock absorbed cylinder subjected to a sudden displacement by a piston would, we think, constitute a "load". But the court, while observing that no load of any kind was supported, placed major emphasis on its conclusion that no static load was supported.

■ We cannot dispute its finding, after hearing testimony and viewing a demonstration, that no such static load, *i. e.,* when a vehicle is at rest, is supported by either the shock absorber or the gas bag. Our inquiry is whether the patent claims require a device supporting both a static and a dynamic load. The critical words are that the device be an enclosed container having movable wall portions "supporting a load tending to move said portions". The concept includes, we think, support of a load before movement begins as well as during movement. If the patent were intended to cover a device which functions only during movement, additional words could have been used. We therefore affirm also the court's finding of non-infringement.

■ We add that, if both we and the district court are in error on this issue, plaintiff would still not prevail, for the doctrine of prior use and publication would then come into play. As we have noted, publications describing the Pleasurizer (or Pliacell) device had been issued over a year before plaintiff filed his January, 1960, continuance-in-part application. If, therefore, the Pleasurizer infringes it also constitutes prior publication concerning and public use of the concept of plaintiff's 1960 application, 35 U.S.C. § 102. Only if plaintiff can take advantage of his 1956 filing date can he succeed. We share the district court's view that the notion that the gases used in the patented device must be uncondensible at normal operating pressures and temperatures had not earlier been revealed, either expressly or impliedly.

In plaintiff's 1956 application he had listed 28 "representative" low gamma gases. Plaintiff's expert testified that eight of these would be liquid at room temperature, and that another, Freon-13, would condense in cold weather. Plaintiff also originally contemplated using a low gamma liquid in conjunction with a low gamma gas and avoiding the problem of condensibility by providing a heating element. Indeed plaintiff himself testified that only after he filed his 1956 application did he realize that a condensible gas would not be effective, and, in a letter written in 1960, in connection with an application for a German patent, wrote that "it never was contemplated until recently that there would be a difference between condensible and uncondensible gases."

■ While ambiguities permit an argument to the contrary, we are satisfied that the January, 1960, application was not a mere "embellishment" of a feature already disclosed. *See Acme Highway Products Corp. v. D. S. Brown Co.,* 431 F.2d 1074, 1080 (6th Cir. 1970). Nor is this simply the making manifest of what was already implicit. *See Indiana General Corp. v. Lockheed Aircraft Corp.,* 408 F.2d 294 (9th Cir. 1968). A patent cannot be enlarged or "broadened by amendment so as to embrace an invention not described in the application as filed, at least when adverse rights of the public have intervened." *Schriber Co. v. Cleveland Trust Co.,* 305 U.S. 47, 57, 59 S.Ct. 8, 13, 83 L.Ed. 34 (1939). Most certainly we cannot say that the district court's finding on this issue was clearly erroneous.

*Affirmed.*